IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **United States of America,** *ex rel.* **TONY WILLIAMS,**<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>**MICHAEL LEMKE**, Warden,<br>**Stateville Correctional Center,**<br><br>　　　　　　　Respondent. | Case No. 13 C 1016<br><br>Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Tony Williams' Application for a Writ of *Habeas Corpus*. For the reasons stated herein, the Court denies the Petition and denies a Certificate of Appealability.

### I. BACKGROUND

Petitioner Tony Williams ("Petitioner") is incarcerated by the State of Illinois, where he is in the custody of Warden Michael Lemke. His incarceration stems from a robbery and murder for which he was convicted in 2001.

The evidence at trial established the following. On the morning of December 22, 1998, Petitioner and his accomplices, Jerry and Roosevelt Clay, entered a Chicago currency exchange, completed small transactions, and stepped outside. A few minutes later, armored-truck driver Terry Madden ("Madden") and his partner arrived at the currency exchange. Madden exited the truck carrying

a "cold bag" that contained keys, documents, and cash. Petitioner or one of his accomplices shot Madden in the forehead at point blank range, grabbed the bag, and ran to a waiting car. Madden died within minutes.

When police arrived, they found a change purse containing documents belonging to Jerry Clay, as well as a piece of paper with a phone number written on it. Based on the papers, police began monitoring activity around a house on North Willard Court in Chicago. Around 1:00 p.m. the day of the crime, police saw Jerry Clay enter the house. Soon after, police observed Roosevelt Clay emerge from the house and enter a car. Jerry Clay reemerged from the house and conversed with the occupants of the car that Roosevelt Clay had entered. It was not long before police arrested both Clays, at which point they found $8,100 in cash sewn into the lining of Roosevelt Clay's jacket.

Police recovered the stolen cold bag, and Petitioner's fingerprints were found on the bag's contents. During a telephone call, Petitioner told his ex-girlfriend, Patrice Smith, that he was involved in the armed robbery but did not kill anyone. Police traced the call to Grand Rapids, Michigan; shortly thereafter, authorities met Petitioner in Grand Rapids, arrested him, and gave him *Miranda* warnings.

When asked about his involvement in the crime, Petitioner changed his story several times. First, he denied being in

Chicago. But when confronted with fingerprint evidence on the cold bag, he explained that he had visited his friend's apartment on the day of the murder only to find Jerry Clay, who gave Petitioner a backpack full of documents and instructed him to get rid of it. When the detective expressed disbelief in that story, Petitioner stated that he was in the getaway car against his will during the crime: he claimed that he was just getting a ride home from the Clays when they stopped at the currency exchange and committed the crimes.

A few hours later, a Cook County Assistant State's Attorney arrived to take Petitioner's statement in writing. He gave Petitioner another round of *Miranda* warnings, and Petitioner agreed to provide a written statement. In it, Petitioner asserted that he participated in the crime as a lookout, admitting that he knew Jerry Clay intended to rob the armored truck and was carrying a gun. That Assistant State's Attorney testified that he had asked Petitioner how he had been treated by the detectives, and Petitioner responded "all good." Ex. N at 1124.

Before trial, Petitioner's counsel moved to suppress the confession, alleging that Petitioner had been physically abused by police during the questioning. Counsel later withdrew that motion because he believed, based on copious contradictory evidence in the record (including the testimony that the detectives' treatment of Petitioner was "all good"), that the motion offered false

allegations. In closing arguments, counsel emphasized the State's obligation to prove Petitioner guilty beyond a reasonable doubt and the inability of certain witnesses to identify Petitioner as one of Madden's killers. The jury found Petitioner guilty of one count of first degree murder and one count of armed robbery.

After a bit of jockeying in the state courts – Petitioner twice appealed his sentence and twice earned a resentencing from the appellate court – Petitioner was sentenced to consecutive prison terms of fifty years for murder and six years for armed robbery. Petitioner's third trip to the appellate court was unsuccessful, and Petitioner did not file a Petition for Leave to Appeal ("PLA") with the Illinois Supreme Court.

Petitioner brought an action under the Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1 *et seq.*, raising numerous claims. The postconviction trial court appointed counsel for Petitioner but ultimately dismissed his Petition. On appeal, Petitioner's appointed counsel filed a brief arguing only that trial counsel was ineffective for failing to pursue the motion to suppress Petitioner's statement and failing to call Roosevelt Clay (who, in a signed affidavit dated well after Petitioner's trial ended, swears that Petitioner was not involved in the crime). Ex. E at 16-17. Unsatisfied with this appellate strategy, Petitioner insisted that his appointed counsel raise more issues. Counsel refused, citing his obligation not to raise frivolous

arguments. Petitioner then sought leave to proceed *pro se* and submitted a *pro se* supplemental brief *instanter* that raised the arguments that counsel omitted. Petitioner indicated that he wished to proceed on both the brief that counsel filed and the supplemental brief. Ex. Z at 2. The appellate court denied leave to proceed *pro se*, rejected the supplemental brief, and addressed on the merits the two claims from counsel's brief. Exs. BB, CC, E.

Petitioner filed a PLA, which the Illinois Supreme Court denied. Petitioner then brought this Petition for a Writ of *Habeas Corpus*, and raises five grounds for relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of counsel on direct appeal; (3) ineffective assistance of postconviction appellate counsel; (4) the trial court's admission of the testimony of Patrice Smith; and (5) the postconviction appellate court's denial of Petitioner's request to file a supplemental petition.

## II. ANALYSIS

### A. Procedural Default

To present his case in federal court, a *habeas* petitioner must first "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A federal claim is exhausted if it was presented throughout one complete round of state-court review, either on direct appeal or in post-conviction proceedings. *Simpson v. Battaglia,* 458 F.3d 585, 593 (7th Cir. 2006).

On direct appeal, Petitioner appealed his conviction to the state appellate court, but never filed a PLA with the Illinois Supreme Court. In order to satisfy the exhaustion requirement, a state prisoner must present his claims to a state supreme court in a petition for discretional review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 839-40 (1999). Consequently, Petitioner's direct appeal did not preserve any of his claims.

On state postconviction review, Petitioner's case was dismissed by the trial court, and the dismissal was affirmed by the appellate court. Petitioner filed a PLA to the Illinois Supreme Court, which was denied. Any claims presented adequately throughout that round of postconviction review can be heard by this Court. *Sturgeon v. Chandler,* 552 F.3d 604, 610 (7th Cir. 2009).

But that raises the question of what it takes for a claim to be presented adequately. "Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim." *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009). In addition, the argument must be made in the petitioner's brief to the court, not in some document "outside the four corners of the [brief]." *Sturgeon,* 552 F.3d at 610.

As described above, Petitioner had some difficulty presenting his claims throughout his postconviction appeals because his appointed appellate counsel refused to argue some of Petitioner's

claims.  The brief submitted by appointed counsel argued only that trial counsel was ineffective for (1) failing to pursue the motion to suppress Petitioner's statement to the police and (2) failing to call Roosevelt Clay.  Petitioner requested that the court withdraw the court-appointed attorney, grant him leave to proceed *pro se*, and accept his *pro se* supplemental brief that raised more issues.  The appellate court denied those requests and heard Petitioner's case based on the claims raised in the brief submitted by appointed counsel.  Exs. BB, CC, E.

Petitioner filed a PLA that raised the same two issues that appointed counsel argued in the appellate brief.  In addition, the PLA referenced Petitioner's supplemental brief that contained more issues, and argued that postconviction appellate counsel was ineffective for failing to raise those issues. Ex. F.  But, in the PLA, Petitioner did not actually argue those issues from his supplemental brief – that is, he did not present the operative facts and controlling law – he merely mentioned them.  Ex. F at 2. He referenced his supplemental appellate brief for "cites of legal cases," Ex. F at 3, but a Petitioner does not satisfy fair presentment by asking the Court "to read other documents, such as his appellate brief," unless state rules entitle litigants to present arguments by incorporation.  *Lockhart v. Hulick,* 443 F.3d 927, 929 (7th Cir. 2006).  Petitioner presents no such state rule, and the Court is unaware of any.

Without addressing whether Petitioner's supplemental brief preserved any claims, the Court can determine that any claim not argued in Petitioner's PLA is not preserved for review by a federal court. Petitioner's claim for ineffective assistance of appellate counsel (direct appeal) and his challenge to the admission of the testimony of Patrice Smith – which were not argued in the PLA – are therefore defaulted procedurally. Similarly, as described in more detail below, the factual bases for his ineffective assistance of trial counsel claim that were not raised in the postconviction PLA are defaulted.

Petitioner does not present any justification for the default. Ineffective counsel is no excuse in this case because the default stems not from the appellate brief but from the inadequate PLA, which was filed *pro se*. To persuade the Court to excuse the default, Petitioner could have argued that this Court's failure to review his claims would result in a "fundamental miscarriage of justice." *See, Patrasso v. Nelson,* 121 F.3d 297, 301 (7th Cir. 1997). This Court sees no apparent fundamental miscarriage of justice, and declines to make Petitioner's arguments for him. *See, Franklin v. Gilmore,* 188 F.3d 877, 884 (7th Cir. 1999). Those grounds not presented adequately in the PLA – as described above – are barred procedurally and do not entitle Petitioner to *habeas* relief.

**B. Ineffective Assistance of Trial Counsel**

Petitioner presents eight reasons why trial counsel was ineffective: for (1) failing to present evidence supporting Petitioner's motion to suppress his statement; (2) failing to call Roosevelt Clay to deny that he was with Petitioner on the day of the crime; (3) stipulating to William Moore's testimony regarding fingerprint evidence that allegedly did not implicate Petitioner; (4) failing to cross-examine Chicago Police Detective Dominic Rizzi regarding the Clay brothers; (5) allowing admission of the Clay brothers' confession; (6) failing to object to the State's reference in its opening statement to evidence gleaned from the Clay brothers; (7) failing to cross-examine Kenneth Fowler regarding Jerry Clay's change purse; and (8) failing to inform Petitioner that he was subject to disciplinary proceedings.

As referenced above, Petitioner presented the Illinois Supreme Court with only the first and second factual bases: that counsel should have pursued Petitioner's initial motion to suppress his confession using certain medical records and called Roosevelt Clay. The other six are barred procedurally.

### *1. Motion to Suppress*

Petitioner argues that trial counsel was ineffective for not tendering any evidence to support Petitioner's motion to suppress his statements. The state court reviewed this claim and determined that Petitioner's trial and appellate counsel did not provide

inadequate assistance. Ex. E. This Court cannot grant *habeas* relief unless the state's adjudication of the claim either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The state appellate court set forth accurately the rule governing ineffective assistance of counsel: the Petitioner must show that counsel's performance fell below an objective standard of reasonableness and that the deficiencies in counsel's performance resulted in prejudice. Ex. E at 13; *Strickland v. Washington,* 466 U.S. 668 (1984). The state court's decision was not "contrary to" clearly established federal law because the court used the correct test. *Williams v. Taylor,* 529 U.S. 362, 405 (2000).

The state appellate court not only applied the proper rule, but also did so reasonably. The court explained that trial counsel made a conscious decision not to pursue the motion to suppress because "counsel believed defendant would give testimony which was inconsistent with the allegations contained in the motion." Ex. E at 15. The court considered it a matter of trial strategy to prevent his client from offering "testimony which was at best inconsistent and . . . possibly perjurious." *Id.* The court held

that trial counsel was not ineffective for withdrawing the motion. *Id.* at 16. This holding is not unreasonable because it is consistent with Supreme Court precedent that instructs that it is not ineffective assistance for a lawyer to prevent his client from giving false testimony. *Nix v. Whiteside,* 475 U.S. 157, 173-74 (1986).

### *2. Calling Roosevelt Clay*

Petitioner's next argument that can be heard on the merits is that counsel was ineffective for failing to call Roosevelt Clay to testify at trial. Petitioner submits that Roosevelt Clay would have testified that Petitioner was not with the Clays on the day of the crime. By affidavit attached to the *habeas* petition, Roosevelt Clay attests that he was not with Petitioner on the day of the shooting and that he is willing to support the affidavit with live testimony.

In adjudicating this claim, the state appellate court noted that Roosevelt Clay's testimony contradicted other evidence. Ex. E at 19. First, Petitioner's statement to police indicated that he was with Roosevelt Clay on the day of the shooting. Second, Roosevelt Clay also stated in his affidavit that he was not with Jerry Clay. A police officer testified that, when investigating the offense on the date of the offense, he saw Roosevelt Clay and Jerry Clay together. The appellate court held that counsel's performance was not inadequate because the proffered testimony was

contradicted by other evidence and would have been detrimental to Petitioner's defense. Ex. E at 20.

The Seventh Circuit has explained that "a lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Best,* 426 F.3d 937, 945 (7th Cir. 2005). Given the strong presumption that counsel's strategic decisions are reasonable, and the deferential standard by which this Court reviews state court decisions in the *habeas* context, this Court cannot say that the state court's decision was unreasonable.

### C. Ineffective Assistance of Postconviction Appellate Counsel

Petitioner argues that his postconviction counsel was ineffective for failing to argue petitioner's additional issues. This issue is not cognizable on federal *habeas* review. 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). The Court cannot grant relief on this ground.

### D. Denial of Leave to File a *Pro Se* Supplemental Brief

Petitioner challenges the postconviction appellate court's ruling that denied him leave to file a *pro se* supplemental brief. This claim is deceptively complex. As a threshold matter, Petitioner cannot now bring this issue before an Illinois Court

because Illinois's Post-Conviction Hearing Act allows for petitions to challenge only "the proceedings which resulted in [the] conviction," and this challenge would be to a separate post-conviction proceeding. 725 Ill. Comp. Stat. 5/122-1(a)(1). Because there remains no state corrective process by which he may make this claim, this argument is not barred procedurally. 28 U.S.C. § 2254(b)(1)(A), (c).

Even though Petitioner may bring his claim, this Court can grant relief only if Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner does not identify what federal right was violated by the state court ruling, but it would have to be a federal right for a litigant who is represented by counsel to file a *pro se* supplemental brief in a state post-conviction proceeding challenging his conviction. The Court is aware of no case that expressly denies that such a right exists.

This Court's review of Petitioner's claim depends on whether that claim was "adjudicated on the merits" by the state court. 28 U.S.C. § 2254(d). Petitioner sought leave to file the *pro se* supplemental brief at issue here, but did not argue that federal law required the court to read it. Ex. Z. The state appellate court denied the motion to file a supplemental brief and gave no explanation. Ex. CC. For the purposes of § 2254, a state court's decision can be "on the merits" even if it is not accompanied by

any reasoning. *Harrington v. Richter,* --- U.S. ---, 131 S.Ct. 770, 784 (2011). But a predicate to the holding in *Harrington* was that the federal claim was presented, in detail, to the state court. *Id.* at 784-85. Here, unlike in *Harrington,* the state court was not given any indication that there was a federal claim underlying the request, not to mention any arguments that might support that claim. Because there is no indication that the state court thought it was adjudicating a federal claim, Petitioner's claim was not adjudicated on the merits, and § 2254(d) does not apply.

As to the merits, the Supreme Court has held that, under the Sixth Amendment, criminal defendants have the right "to make [their] own defense personally" and proceed *pro se*. *Faretta v. California,* 422 U.S. 806, 819 (1975). The *Faretta* Court noted that, when a defendant proceeds *pro se*, the state may appoint "standby counsel" who can aid the accused or take over if necessary. *Id.* at 834 n.46. Arguably, that precedent could support Petitioner's claim that he is entitled to submit a *pro se* supplemental brief – after all, *Faretta* recognizes his federal right to represent himself.

But that argument faces strong precedent headwinds. For one, states are under no obligation to provide a procedure for collateral attacks on convictions. *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987); *see also,* 28 U.S.C. § 2254(b)(1)(B)(I) (contemplating that there may be "an absence of available State

corrective process"). If there is no right to postconviction challenges, it follows that there should be no right to file a supplemental brief in a postconviction challenge. But that reasoning is suspect, because there is a federal right to appointed counsel on direct appeal, even though "a State is not obliged to provide any appeal at all for criminal defendants." *Ross v. Moffitt,* 417 U.S. 600, 606-07 (1974). That is to say, just because a state has no obligation to provide a certain procedure does not mean that, if the state chooses to provide that procedure, the state may do so however it pleases. *Cf. Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 540-41 (1985) (procedures for revoking statutory property interests must comply with due process, even if the State is not obligated to grant the property interest in the first place).

The stronger precedent against Petitioner's position takes *Faretta* head-on. The Seventh Circuit has held that, where a defendant exercises his *Faretta* right and proceeds *pro se*, and standby counsel is never called upon, the defendant has no right to effective assistance of standby counsel. *Simpson v. Battaglia,* 458 F.3d 585, 597 (7th Cir. 2006). This rule recognizes the tension between the defendant's rights to competent appointed counsel and to represent himself. The Court resolved that tension in favor of having the defendant pick one or the other – not both. *See also, United States v. Chavin,* 316 F.3d 666, 671 (7th Cir. 2002)

(explaining that "there is no Sixth Amendment right to hybrid representation").

Notwithstanding the fact that Petitioner's claim involves his right to litigate a collateral attack – not his criminal trial, as in *Faretta* – Petitioner's claims rest on the idea that he should be able, simultaneously, to have appointed counsel and represent himself. But, under *Simpson,* that is not the law in this circuit. The Constitution does not afford a right to file a *pro se* supplemental brief in a postconviction proceeding in which the petitioner is represented by counsel.

### III. <u>**CERTIFICATE OF APPEALABILITY**</u>

To obtain a certificate of appealability, Petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. He has made such a "substantial showing" if "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight,* 653 F.3d 445, 446 (7th Cir. 2011). This Court's application of the procedural bars in § 2254 is routine, and reasonable jurists cannot debate whether the state court's resolution of Petitioner's Sixth Amendment claim was reasonable. While the supplemental brief issue required more involved analysis, in the end it is not a close question that the Constitution does not afford Petitioner a federal right to file a

*pro se* supplemental brief in a postconviction proceeding in which appointed counsel had already filed the primary brief. The Court denies a certificate of appealability.

### IV. CONCLUSION

For the reasons herein, the Petition for a Writ of *Habeas Corpus* [ECF No. 1] is denied. The Court denies a Certificate of Appealability.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　
Harry D. Leinenweber, Judge
United States District Court

Date:12/30/2013